# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ROGER HEPNER, | Case No. 1:18-cv-00774-NODJ-EPG-PC |
|---|---|
| Plaintiff, | FINDINGS AND RECOMMENDATION TO GRANT COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COUNTY OF TULARE, et al., | (ECF No. 124) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Roger Hepner ("Plaintiff"), represented by counsel, is proceeding in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court is the motion for summary judgment filed by the County of Tulare and the Tulare County Sheriff ("County Defendants"). (ECF No. 124.) For the reasons described below, the undersigned recommends that the motion for summary judgment be granted.

**I.   BACKGROUND**

This action is proceeding on Plaintiff's Second Amended Complaint ("SAC") for the following claims: (1) assault; (2) battery; (3) intentional infliction of emotional distress; (4) violation of civil rights under 42 U.S.C. § 1983; (5) *Monell* liability; (6) violation of California Civil Code section 52.1; (7) violation of the Unruh Act; (8) negligent hiring and supervision; and (9) negligent training. (ECF No. 60.)

On November 3, 2023, County Defendants filed a motion for summary judgment. (ECF No. 124.) On November 17, 2023, Plaintiff filed an opposition to the motion for summary

1

judgment. (ECF No. 131.) On November 27, 2023, County Defendants filed a reply. (ECF No. 132.) On February 23, 2024, the Court held a hearing on the motion. (ECF No. 143.)

## II. FACTUAL ALLEGATIONS OF THE SAC

Plaintiff's claims stem from an incident that occurred on October 27, 2017, at the Tulare County pretrial detention facility ("the Facility") while Plaintiff, who is developmentally challenged, was a pretrial detainee. The SAC alleges that an unknown Tulare County Sheriff ("TCS") deputy began taunting and harassing Plaintiff, Plaintiff tossed a closed plastic peanut butter jar filled with coffee in the direction of the TCS deputy,[1] the TCS deputy ran to Plaintiff, lifted Plaintiff into the air, body-slammed Plaintiff, then mounted atop Plaintiff and began beating Plaintiff's face and body with his fists. At some point during the incident, Plaintiff lost consciousness, but the TCS deputy continued to beat Plaintiff's face without stopping or calling for backup. The beating stopped when other TCS deputies arrived and restrained the TCS deputy. (ECF No. 60 at 5.[2]) County Defendants state that "[t]here are disputed facts as to the specific events of the interaction, physical altercation and resulting injuries, but those are not material to the issues raised in this motion" for summary judgment. (ECF No. 124-1 at 6.)

It is undisputed that the TCS deputy was Nicholas O'Neal ("O'Neal"), who was hired as a correctional deputy and had a one-year probationary period from November 13, 2016 through November 12, 2017, and was working at the Facility as a correctional deputy on October 27, 2017. (ECF No. 124-1 at 6; ECF No. 124-2 at 2; ECF No. 131-6 at 2–3.)

## III. MOTION FOR SUMMARY JUDGMENT

County Defendants move for summary judgment on the fourth cause of action (§ 1983 claim) because they are not vicariously liable for the acts of O'Neal and on the fifth cause of action (*Monell* liability) because Plaintiff cannot prove the existence of an unconstitutional policy, practice, or custom that caused a deprivation of Plaintiff's constitutional rights. County Defendants further contend they are immune from liability on the state law causes of action pursuant to California Government Code section 844.6.

---

[1] The peanut butter jar stayed closed the entire time and caused no injury to anyone. (ECF No. 60 at 5.)
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

**A. Summary Judgment Legal Standard**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded fact-finder could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence

at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n.2 (quoting *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 258 (3d Cir. 1983)).

### B. Objections to Evidence

To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment.

### C. Fourth Cause of Action

In the fourth cause of action, the SAC asserts a claim pursuant to 42 U.S.C. § 1983, alleging that "Plaintiff has a constitutional right to be free from unlawful search, seizure, detention, assault, and battery and bodily intrusion, all of which were suffered by Plaintiff in the course of the incident and the conduct of Defendants at the 'infirmary'" and that " Plaintiff was subjected to unlawful assault and battery as a result of the conduct of Defendants." (ECF No. 60 at 10.) County Defendants contend that summary judgment is appropriate on the fourth cause of action because a "local government may not be sued under 1983 for an injury inflicted solely by its employees or agents." (ECF No. 124-1 at 12 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

Plaintiff's opposition on this issue focuses on whether O'Neal acted under color of authority, arguing that "there is little doubt, or at least a significant question of fact, that O'Neal was acting under color of authority at the time of this battery; and therefore, County Defendants

1  would be liable for that conduct under color of authority." (ECF No. 131 at 11.) Moreover, at the
2  hearing, Plaintiff's counsel specifically directed the Court's attention to *Anderson v. Warner*, 451
3  F.3d 1063 (9th Cir. 2006), and represented that *Anderson* would support the argument that
4  County Defendants, as the supervising and hiring authority for O'Neal, can be liable under
5  § 1983 for O'Neal's actions so long as O'Neal was acting under color of state law.

6        The Court disagrees with counsel's interpretation and finds that of *Anderson* does not
7  stand for the proposition that County Defendants, as the supervising and hiring authority for
8  O'Neal, can be liable under § 1983 for O'Neal's actions so long as O'Neal was acting under
9  color of state law. In fact, *Anderson* stands for the opposite proposition. Anderson, the plaintiff,
10 accidentally rear-ended the personal vehicle of Warner, who was employed by the Mendocino
11 County Sheriff's Department as a jail commander. Warner opened Anderson's door and began
12 hitting Anderson in the face and neck. At the time of the incident, Warner was off duty and out
13 of uniform but told bystanders that he was a cop and to stay back. *Anderson*, 451 F.3d at 1065–
14 66. Although Warner "was acting under color of state law when he invoked his law enforcement
15 status to keep bystanders from interfering with his assault," the Ninth Circuit held that Anderson
16 "has not shown that the County's asserted deficiencies in hiring, training and supervision,[3] if
17 any, amount to a policy reflecting 'deliberate indifference to the rights of persons with whom the
18 police come into contact.'" *Id.* at 1068, 1070 (quoting *City of Canton v. Harris*, 489 U.S. 378,
19 388 (1989)).

20       Here, whether O'Neal was acting under color of state law is not at issue in the summary
21 judgment motion. Moreover, such an argument is based on a theory of *respondeat superior*, and
22 the Supreme Court has held that "a municipality cannot be held liable under § 1983 on a
23 *respondeat superior* theory." *Monell*, 436 U.S. at 691. *Accord Anderson*, 451 F.3d at 1070 ("[A]
24 municipality 'cannot be held liable under § 1983 on a *respondeat superior* theory,' that is, '*solely*

---

[3] Anderson argued "that the County was aware that Warner had a reputation for being prone to violence and aggressive behavior," "that it negligently hired Warner for a position where there was a substantial risk that Warner would violate the rights of others," and "that the County failed to train Warner adequately in the proper use of his authority and was negligent in its supervision of him." *Anderson*, 451 F.3d at 1070.

because it employs a tortfeasor.' (quoting *Monell*, 436 U.S. at 691)). Accordingly, the Court finds that summary judgment in favor of County Defendants is appropriate with respect to the fourth cause of action.

### D. Fifth Cause of Action

County Defendants argue that summary judgment is appropriate on the fifth cause of action because "Plaintiff is unable to present evidence that the moving defendants had an unconstitutional policy, procedure or custom that was deliberately indifferent to Plaintiff's constitutional rights." (ECF No. 124-1 at 16.) In the opposition, Plaintiff contends that "County Defendants failed to develop and adhere to a written policy regarding the identification and evaluation of mentally challenged inmates; failed to develop and adhere to a written policy regarding de-escalation methods prior to use of force; and failed to train their officers on such policies" and that the "deliberate indifference to their deficient policies constitute official policy" such that liability may attach. (ECF No. 131 at 13 (capitalization omitted).)

During oral argument on the *Monell* cause of action, Plaintiff's counsel clarified that their central argument on this point was the deficiency of the policy regarding de-escalation and the lack of training on de-escalation techniques.

#### 1. Legal Standard

"To impose *Monell* liability on a municipality under Section 1983, plaintiff must prove: (1) [Plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) "the policy is the moving force behind the constitutional violation." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). The Ninth Circuit has "observed three ways a plaintiff can satisfy *Monell*'s policy requirement: The municipal government acts pursuant to an express official policy, the government maintains a longstanding practice or custom, or the act was committed or ratified by an official with policy-making authority." *Scanlon v. Cnty. of Los Angeles*, No. 21-55999, --- F.4th ----, 2024 WL 390103, at *18 (9th Cir. Feb. 2, 2024) (citing *Gordon*, 6 F.4th at 973–74). "Official nonfeasance can constitute a *Monell* violation when the municipality in effect 'has a

1  policy of inaction and such inaction amounts to a failure to protect constitutional rights.'"
2  *Scanlon*, 2024 WL 390103, at *18 (quoting *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir.
3  2010)).

4       "In limited circumstances, a local government's decision not to train certain employees
5  about their legal duty to avoid violating citizens' rights may rise to the level of an official
6  government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "To
7  satisfy the statute, a municipality's failure to train its employees in a relevant respect must
8  amount to 'deliberate indifference to the rights of persons with whom the [untrained employees]
9  come into contact.'" *Id.* (alteration in original) (quoting *Canton*, 489 U.S. at 388). "Only then
10 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable
11 under § 1983.'" *Connick*, 563 U.S. at 61 (quoting *Canton*, 489 U.S. at 389). "A municipality's
12 culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to
13 train." *Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)
14 (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good
15 deal further removed from the constitutional violation, than was the policy in *Monell*.")).

16       "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal
17 actor disregarded a known or obvious consequence of his action.'" *Park v. City & Cnty. of*
18 *Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quoting *Board of Comm'rs of Bryan Cnty. v.*
19 *Brown*, 520 U.S. 397, 410 (1997)). Whether the policy amounted to a deliberate indifference to
20 Plaintiff's constitutional right "requires a showing that the facts available to the County put it on
21 actual or constructive notice that its practices with regard to [the policy] were substantially
22 certain to result in the violation of the constitutional rights of [its] citizens," *Sandoval v. Cnty. of*
23 *San Diego*, 985 F.3d 657, 682 (9th Cir. 2021) (second alteration in original) (footnote, citation,
24 and internal quotation marks omitted). "In some circumstances, the policy may be so facially
25 deficient that any reasonable policymaker would recognize the need to take action," and "a
26 plaintiff need point only to the policy itself to establish that the municipality's policymakers
27 were on notice that the plaintiff's federally protected rights would likely be violated if they failed
28 to act." *Park*, 952 F.3d at 1141–42 (citing *Brown*, 520 U.S. at 409).

"Alternatively, if the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Park*, 952 F.3d at 1142 (citing *Connick*, 563 U.S. at 62; *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). The Ninth Circuit "consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (citing *Brown*, 520 U.S. at 409). "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"— necessary to trigger municipal liability.'" *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 407). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

2. <u>Deprivation of Constitutional Right</u>

With respect to the first element, whether Plaintiff was deprived of a constitutional right, County Defendants do not argue otherwise and concede that "[i]t is not disputed that former Deputy O'Neal used excessive force." (ECF No. 132 at 4.) Plaintiff agrees that "[i]t is undisputed between County Defendants and Plaintiff that O'Neal's use of force was unreasonable and excessive[.]"[4] (ECF No. 131 at 16.) Accordingly, for purposes of this motion for summary judgment, there is no dispute of material fact that Plaintiff was deprived of his constitutional right to be free from excessive force.

///

---

[4] Plaintiff notes that "O'Neal disputes that his use of force was unreasonable and excessive under the circumstances." (ECF No. 131 at 16.)

8

3. <u>Policies Regarding Use of Force</u>

    a. Whether Existing Policy Was Facially Deficient

It is undisputed that in 2016 and 2017, the Tulare County Sheriff utilized Lexipol, a company that develops state-specific policies for public safety agencies, to develop its use of force policy. Lexipol policies are constantly updated to reflect changes in the law and many law enforcement agencies in California utilize Lexipol in developing their policies. (ECF No. 124-2 at 2; ECF No. 131-6 at 3–4.) Plaintiff argues that "[n]either Policy 300 nor 514 explicitly comment on or breakdown the County Defendants' de-escalation policies" and "review of these policies do little to instruct and/or guide officers in how to de-escalate situations appropriately and adequately with inmates." (ECF No. 131 at 17.)

Policy 300.3 notes that "the ultimate objective of every law enforcement encounter is to avoid or minimize injury," while recognizing that "nothing in this policy requires a deputy to retreat or be exposed to possible physical injury before applying reasonable force" and "that circumstances may arise in which deputies reasonably believe that it would be impractical or ineffective to use any of the tools, weapons or methods provided by the Department." (ECF No. 124-4 at 47.) However, "the use of any improvised device or method must nonetheless be reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose." (*Id.*) Policy 514.2 declares: "It is the policy of this office to accomplish the department functions with minimal reliance on the use of force and generally as the last alternative." (ECF No. 131-2 at 114.) Policy 514.4 states in pertinent part: "If there is no need for immediate action, staff should attempt to resolve the situation through voluntary compliance . . . . The assistance of non-custody staff (e.g., psychologists, counselors) should be considered when attempting to resolve a situation without confrontation." (*Id.* at 115.)

Accordingly, to the extent Plaintiff contends that Policies 300 and 514 are "so facially deficient that any reasonable policymaker would recognize the need to take action," *Park*, 952 F.3d at 1141, the Court finds that Plaintiff "has not plausibly alleged that this is a situation in which 'the need for more or different' action was 'so obvious' that we can infer deliberate indifference from the text of the policy alone," *id.* at 1142 (quoting *Canton*, 489 U.S. at 390).

9

        b. *De Facto* Policy of Excessive Force

Plaintiff argues that "County Defendants have a *de facto* policy that causes officers to use excessive force because TCSD Use of Force Policy (300) and Use of Force Refer to Department Policy (514) fail to instruct officers with a written policy describing de-escalation tactics and efforts to avoid use of force." (ECF No. 131 at 16.) If, as the Court has found, "the policy is not obviously, facially deficient, a plaintiff must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Park*, 952 F.3d at 1142. Here, Plaintiff has failed to do so, and "the record lacks evidence of any other event involving similar conduct or constitutional violations."[5] *Gordon*, 6 F.4th at 974. Accordingly, the Court finds that even drawing all reasonable inferences in the light most favorable to Plaintiff, any alleged *de facto* policy did not amount to a deliberate indifference to Plaintiff's constitutional rights.

        c. Failure to Train

It is undisputed that O'Neal attended the Tulare County Sheriff's Office's orientation after he was hired and before he began working at the Facility. The orientation included training and a test on the use of force policy. O'Neal read and reviewed the Sheriff's policies and procedures and understood he was required to follow them during his employment. (ECF No. 124-2 at 3; ECF No. 131-6 at 6.) O'Neal completed the Correctional CORE Academy, which included academic and physical training on the use of force and training regarding handling prisoners with mental disabilities, and the Penal Code section 832 course before the October 27, 2017 incident. (ECF No. 124-2 at 4; ECF No. 131-6 at 8.) O'Neal completed his required jail training prior to the October 27, 2017 incident. (ECF No. 124-2 at 4; ECF No. 131-6 at 9.)

---

[5] Plaintiff points to an August 21, 2017 incident in which an inmate threw food at O'Neal. (ECF No. 131 at 19–20.) According to the memo prepared by Sergeant Santos Salgado regarding the incident, when Salgado responded to the unit, he told O'Neal to remain at the kiosk (deputy work station) while Salgado and other deputies went to the inmate's cell. Salgado noticed O'Neal had followed the others to the cell and Salgado told O'Neal to return to the work station. Salgado made the decision to remove the inmate from the cell and place him at intake because the inmate was completely nude, speaking to himself, and displaying erratic behavior. As Salgado went to help handcuff the inmate, he asked for handcuffs and O'Neal offered a set. As the inmate was escorted out of the unit, Salgado noticed O'Neal following. Salgado told the other deputies to escort the inmate to intake and told O'Neal he wanted to speak with him. Salgado told O'Neal that "he needed to calm down and 'let this incident go'" and "had specifically told [O'Neal] to stay out of this situation because it was evident [O'Neal] was mad at" the inmate. (ECF No. 124-4 at 63.) The Court notes that this is one prior incident and it did not involve excessive force, which is the constitutional violation at issue in the instant matter.

County Defendants have submitted evidence that O'Neal attended the following eleven trainings between when he was hired and the October 27, 2017 incident: (a) Firearms: Semi-Auto Pistol on February 24 and April 25, 2017; (b) 832 P.C. Course – Firearms on March 10, 2017; (c) Adult Correctional Core Course on April 14, 2017; (d) Force Option: OC Spray on April 17, 2017; (e) Force Option: Expandable Baton on April 18, 2017; (f) Force Option: Advanced Taser X-26 on April 19, 2017; (g) Range Qualifications on September 25 and October 13, 2017; (h) Sheriff's Emergency Response Team (SERT) Testing on September 25, 2017. (ECF No. 124-4 at 5, 59–60.) Mark Gist, currently an Assistant Sheriff, declares that he has access to O'Neal's training records, he is "familiar with the training requirements for the SHERIFF's correctional deputies," "Mr. O'Neal was extensively trained on 'verbal judo,' which is now known as verbal de-escalation," and "[i]t is the policy, practice, and custom of the SHERIFF to teach verbal judo, or verbal de-escalation, in any and all trainings involving the use of force so deputies understand that using force is a last resort."[6]  (ECF No. 124-4 at 4–5.)

Plaintiff argues that "County Defendants failed to train O'Neal on policies related to . . . de-escalation tactics." (ECF No. 131 at 19.) At the hearing, Plaintiff's counsel pointed to O'Neal's deposition, in which O'Neal answered in the affirmative that he used his "Tulare County Sheriff's Department training in responding to Mr. Hepner" and "determined the best course of action in interacting with Mr. Hepner based on [O'Neal's] training with Tulare County sheriff's Department." (ECF No. 131-2 at 51–52.) O'Neal further testified, "I don't recall there being deescalation training" and "I don't recall getting trained on [techniques in how to defuse situations with inmates], no." (ECF No. 131-2 at 37, 38.) Plaintiff contends that O'Neal's testimony creates a dispute of fact regarding whether O'Neal received training on de-escalation.

The Court has reviewed and considered the evidence and ultimately concludes it does not raise a sufficient dispute of fact. O'Neal's statement that he acted according to all training is not itself sufficient to show that he in fact did so, or that his actions were consistent with training. The statement is vague and conclusory. Additionally, O'Neal's deposition testimony that he did

---

[6] Gist declares that "the goal of verbal judo is using words to help defuse aggressive situations and facilitate a peaceful interaction." (ECF No. 124-4 at 4.)

1 not *recall* receiving de-escalation training is not itself sufficient to show that there was no such
2 training. In contrast, County Defendants have put forth specific evidence in the form of O'Neal's
3 training log and Mark Gist's declaration that O'Neal attended eleven trainings that included
4 instruction on verbal de-escalation. Although Plaintiff's counsel suggests that the declaration is
5 not based on any personal knowledge, Plaintiff has failed to provide any evidence to contradict
6 the training log showing that O'Neal attended eleven use of force trainings and Gist's declaration
7 that "[i]t is the policy, practice, and custom of the SHERIFF to teach verbal judo, or verbal de-
8 escalation, in any and all trainings involving the use of force so deputies understand that using
9 force is a last resort." (ECF No. 124-4 at 4–5.) Plaintiff did not depose the declarant or otherwise
10 offer evidence that this was speculative and without personal knowledge.

11 Additionally, "evidence of the failure to train a single officer is insufficient to establish a
12 municipality's deliberate policy." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir.
13 2007). "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a single
14 officer's training 'can only be classified as negligence on the part of the municipal defendant—a
15 much lower standard of fault than deliberate indifference'" and thus, does "not meet [the] burden
16 to withstand Defendants' motion for summary judgment." *Blankenhorn*, 485 F.3d at 484–85
17 (quoting *Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994)).

18 "A pattern of similar constitutional violations by untrained employees is 'ordinarily
19 necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563
20 U.S. at 62 (citing *Brown*, 520 U.S. at 409). However, "'in a narrow range of circumstances,' a
21 pattern of similar violations might not be necessary to show deliberate indifference," such as "the
22 hypothetical example of a city that arms its police force with firearms and deploys the armed
23 officers into the public to capture fleeing felons without training the officers in the constitutional
24 limitation on the use of deadly force." *Connick*, 563 U.S. at 63 (quoting *Brown*, 520 U.S. at 409)
25 (citing *Canton*, 489 U.S. at 390, n.10).

26 Here, there is nothing in the record establishing a "pattern of similar constitutional
27 violations by untrained employees."[7] *Connick*, 563 U.S. at 62. Nor are "the unconstitutional

---

28 [7] *See* note 5, *supra*.

12

consequences of failing to train . . . so patently obvious that [County Defendants] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64. "It is undisputed that . . . officers are provided general training on" the use of force, and "[w]hether or not the . . . training included specific guidance about [de-escalation], any defect in 'the nuance of the allegedly necessary training' is in no way similar to the Supreme Court's hypothetical example" of deploying armed officers into the public to capture fleeing felons without use of deadly force training. *Simmons v. City of Los Angeles*, No. 21-56272, 2023 WL 3316332, at *2 (9th Cir. May 9, 2023).

          4.  <u>Lack of Policies and Training Regarding Developmentally Challenged Inmates</u>

Plaintiff asserts that he "was deprived of his right to be free from unreasonable search and seizure caused by the County Defendants' failure to develop and adhere to written policies for their correctional officers in how to deal with mentally and/or developmentally challenged inmates." (ECF No. 131 at 13.) County Defendants argue that "Plaintiff's unsupported claim . . . that the Sheriff failed to develop policies regarding how to deal with mentally and/or developmentally challenged inmates is immaterial" because the "SAC does not assert a cause of action for failure to draft policies for how to deal with mentally/developmentally challenged inmates." (ECF No. 132 at 6.) County Defendants also assert that "Plaintiff has produced no evidence that mental illness or Plaintiff's developmental delays played a material role in the incident." (ECF No. 132 at 6.)

The Ninth Circuit "consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." *Long*, 442 F.3d at 1189. It is undisputed that in 2017 the Sheriff sent newly hired correctional deputies, including O'Neal, to the Correctional CORE Academy, which included training regarding handling prisoners with mental disabilities. (ECF No. 124-2 at 4; ECF No. 131-6 at 8.) Plaintiff has failed to proffer evidence that County Defendants were on actual or constructive notice that its practices and any alleged failure to develop specific policies and train correctional officers in how to deal with developmentally challenged inmates "were 'substantially certain to result in the violation of the constitutional rights of [its] citizens.'"

*Sandoval*, 985 F.3d at 682 (alteration in original) (quoting *Castro*, 833 F.3d at 1076). *See Connick*, 563 U.S. at 62 ("Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.' Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." (quoting *Brown*, 520 U.S. at 407)).

Here, there is nothing in the record establishing a "pattern of similar constitutional violations by untrained employees."[8] *Connick*, 563 U.S. at 62. Nor are "the unconstitutional consequences of failing to train . . . so patently obvious that [County Defendants] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64. "It is undisputed that . . . officers are provided general training on" the use of force and handling prisoners with mental disabilities, and "any defect in 'the nuance of the allegedly necessary training' is in no way similar to the Supreme Court's hypothetical example" of deploying armed officers into the public to capture fleeing felons without use of deadly force training. *Simmons*, 2023 WL 3316332, at *2.

### 5. Conclusion

Taking all evidentiary inferences in favor of Plaintiff as the nonmoving party, Plaintiff has at most shown that County Defendants could have developed more detailed policies specifically addressing de-escalation techniques and mentally and/or developmentally challenged inmates. However, "[i]n virtually every instance where a person has had his or her constitutional rights violated . . . , a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident," and the Supreme Court has rejected imposing liability on such a standard because it "would result in *de facto respondeat superior* liability" and "an endless exercise of second-guessing." *Canton*, 489 U.S. at 392 (quoting *Tuttle*, 471 U.S. at 823 (opinion of Rehnquist, J.)). Plaintiff has not produced sufficient evidence to create a triable issue as to whether Plaintiff's injuries were due to deficient policies and/or failure to train amounting

---

[8] *See* note 5, *supra*.

to deliberate indifference. Viewing the evidence in the light most favorable to Plaintiff, no rational finder of fact could decide that County Defendants acted with deliberate indifference. Accordingly, the Court finds that summary judgment in favor of County Defendants is appropriate with respect to the fifth cause of action.

### E. Immunity for State Law Claims

County Defendants contend that they are entitled to summary judgment on all of Plaintiff's state law claims because they are immune from liability under California Government Code section 844.6(a). (ECF No. 124-1 at 16.) Plaintiff argues that "Government Code section 844.6 is unconstitutional, as it denies Plaintiff, (a mentally delayed inmate) equal protection of the law" because it "irrationally distinguishes prisoners from non-prisoners." (ECF No. 131 at 20, 21.)

California Government Code section 844.6(a) provides:

> (a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for:
>
> (1) An injury proximately caused by any prisoner.
>
> (2) An injury to any prisoner.[9]

Cal. Gov't Code § 844.6(a). "Public entities in California are not liable for tortious injury unless liability is imposed by statute." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1069 (Cal. Ct. App. 2013) (citing Cal. Gov't Code § 815). "Section 844.6, subdivision (a)(2) establishes the State's immunity to liability for injuries to prisoners." *Id.* at 1070. *Accord Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1383 (2010) ("Although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does *not* apply in the case of injuries to prisoners.").

---

[9] "As used in this chapter, 'prisoner' includes an inmate of a prison, jail, or penal or correctional facility. For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked, as described in Section 7 of the Penal Code, becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes." Cal. Gov't Code § 844.

15

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "The first question courts must ask when conducting an equal protection analysis is whether the legislative or administrative classification at issue burdens a 'suspect' or 'quasi-suspect' class." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). Where, as here, "the statute does not involve a suspect or quasi-suspect classification, then 'rational basis' review applies, in which a court must ask whether the statute is rationally-related to a legitimate governmental interest."[10] *Id.* (citing *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 83–84 (2000)). *See Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999) ("We review under the rational basis test because prisoners are not a suspect class . . . ."). "This analysis asks whether 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' . . . if we find a 'plausible reason[ ] for [California's] action, our inquiry is at an end,' . . . ." *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (citations omitted).

"The constitutionality of section 844.6 has been tested" in California state court and "was upheld against attack on equal protection and due process grounds." *Hughes v. Cnty. of San Diego*, 35 Cal. App. 3d 349, 351 (Cal. Ct. App. 1973) (citing *Reed v. City & Cnty. of San Francisco*, 237 Cal. App. 2d 23 (Cal. Ct. App. 1965)). In upholding the constitutionality of California Government Code section 844.6, the state court found:

> The statute allows prisoners to sue the individual prison officials for their injuries, but prevents suit against the public entity. The immunity rationally relates to the promotion of orderly prison administration in at least one way. Because he will be personally responsible for any liability he incurs, the individual prison official may be more cautious in performing his duties. This extra caution might reduce the number of prisoner injuries resulting from official misfeasance.

*Hughes*, 35 Cal. App. 3d at 352.

---

[10] In the opposition, Plaintiff states that rational basis review applies. (ECF No. 131 at 21.)

1    Plaintiff argues that California Government Code section 844.6(a)'s "application should
2 not extend to situations where a prison guard intentionally commits an act of violence against an
3 inmate. Such actions are a violation of constitutional rights, go against public policy and human
4 rights principles, and fall outside the intended scope of immunity as provided by law." (ECF No.
5 131 at 22.) Plaintiff contends that "the Court should carve out an exception here permitting state
6 actions to proceed against municipalities in cases of excessive force by correctional officers,
7 particularly when aimed at safeguarding mentally challenged inmates" (ECF No. 131 at 24.)

8    "As the Supreme Court has made clear, 'rational-basis review in equal protection analysis
9 "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."'"
10 *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999) (quoting *Heller v. Doe*, 509 U.S. 312, 319
11 (1993)). "Rather, the 'legislation is presumed to be valid and will be sustained if the
12 classification drawn by the statute is rationally related to a legitimate state interest.'" *Madrid*,
13 190 F.3d at 996 (quoting *Cleburne*, 473 U.S. at 440). "A statute 'does not fail rational-basis
14 review because it is not made with mathematical nicety or because in practice it results in some
15 inequality.' Rather, the constitutional test requires only that the statute, as a general matter, serve
16 a legitimate governmental purpose." *Doe v. United States*, 419 F.3d 1058, 1063 (9th Cir. 2005)
17 (citation omitted)).

18    As noted by the California Court of Appeal, California Government Code section
19 844.6(a)'s public entity immunity "rationally relates to the promotion of orderly prison
20 administration in at least one way. Because he will be personally responsible for any liability he
21 incurs, the individual prison official may be more cautious in performing his duties. This extra
22 caution might reduce the number of prisoner injuries resulting from official misfeasance."
23 Hughes, 35 Cal. App. 3d at 352. "A statute is presumed constitutional, and '[t]he burden is on the
24 one attacking the legislative arrangement to negative every conceivable basis which might
25 support it[.]'" *Heller*, 509 U.S. at 320 (first alteration in original) (quoting *Lehnhausen v. Lake
26 Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)). Plaintiff has not done so here. Accordingly,
27 "we find a plausible reason for California's action, [and] our inquiry is at an end." *Fowler
28 Packing Co.*, 844 F.3d at 815 (brackets and citations omitted). Therefore, summary judgment in

favor of County Defendants is appropriate with respect to the first, second, third, sixth, seventh, eighth, and ninth cause of action.

### F. Punitive Damages

County Defendants assert that they are entitled to judgment on the claim of punitive damages because "[u]nder both federal and California law, [they] are not liable for punitive or exemplary damages." (ECF No. 124-1 at 18.) Plaintiff argues "summary judgment on punitive damages is not appropriate at this stage given that the jury needs to decide on the lawfulness of O'Neal's use of force, and whether County Defendants' deficient policies were the moving force behind the unreasonable search and seizure against Plaintiff." (ECF No. 131 at 26.)

The Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). *See Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (holding that a county is immune from punitive damages). Additionally, "[i]n California, a public entity is not liable for punitive damages." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1012 (9th Cir. 2014) (citing Cal. Gov't Code § 818[11]). Further, as set forth in sections III(C)–(E), *supra*, County Defendants are entitled to summary judgment with respect to all causes of action. Therefore, there are no predicate federal or state claims that can serve as a basis for punitive or exemplary damages against County Defendants. Accordingly, summary judgment in favor of County Defendants is appropriate with respect to punitive damages.

### G. Duplicative Defendant

County Defendants move to dismiss the County of Tulare as a duplicative defendant in this matter because the "Tulare County Sheriff is a subsidiary of the County of Tulare under California law; thus, they are one entity" and "Plaintiff's allegations are specifically against the Tulare County Sheriff, not the County of Tulare." (ECF No. 124-1 at 18, 19.) Plaintiff argues "it is imperative that both the Defendant County and Tulare County Sheriff remain as defendants in

---

[11] "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." Cal. Gov't Code § 818.

the case" because "[t]hroughout the course of this litigation, including in responding to discovery, Defendant County of Tulare responded to discovery and verified said responses. As such, to avoid any confusion neither entity defendant should be dismissed." (ECF No. 131 at 26.)

In light of the undersigned's conclusion that County Defendants are entitled to summary judgment with respect to all causes of action, it is not necessary to determine whether the County of Tulare should be dismissed as a duplicative defendant. However, in the event the district judge determines that summary judgment in favor of County Defendants is not warranted on all causes of action, the undersigned finds that dismissal of the County of Tulare as a duplicative defendant is not warranted.

In support of their argument, County Defendants cite to California Government Code sections 811.2 and 815.2 in addition to *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001). However, the Court finds that *Streit* and its analysis of California Government Code sections 811.2 and 815.2 does not provide support for County Defendants' position but rather compels the Court to conclude that both the County of Tulare and the Tulare County Sheriff are subject to liability under 42 U.S.C. § 1983. In *Streit*, the Ninth Circuit held that the Los Angeles Sheriff's Department ("LASD"), "when functioning as the administrator of the local jail, is a County actor, and that the County may therefore be subject to liability under 42 U.S.C. § 1983." 236 F.3d at 565. *Streit* also concluded that "a local law enforcement agency can be considered a separably suable entity" and that "the LASD is a separably suable entity." *Id.* at 567, 566. Thus, the Ninth Circuit found that because the LASD "acts for the County in its capacity as the administrator of the Los Angeles County jails, . . . both the LASD and the County are subject to liability under section 1983." *Id.* at 555–56. Therefore, dismissal of the County of Tulare as a duplicative defendant is not warranted.

IV. RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. County Defendants' motion for summary judgment (ECF No. 124) be GRANTED; and
2. The County of Tulare and the Tulare County Sheriff be granted summary judgment on all causes of action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 1, 2024**              /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE